UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HAMILTON, et al.,

      Plaintiffs,

v.

DONALD WILLIAMSON, et al.,

      Defendants.
_____/

CIVIL ACTION NO. 07-13401

DISTRICT JUDGE PAUL D. BORMAN

MAGISTRATE JUDGE DONALD A. SCHEER

## ORDER DENYING PLAINTIFFS' MOTION
## FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiffs' Motion for Leave to File Second Amended Complaint was referred to the undersigned magistrate judge for hearing and determination. The parties appeared, by counsel, for hearing on January 8, 2009. Having reviewed Plaintiffs' Motion, together with Defendants' Responses and Plaintiffs' Replies, and having heard the arguments of counsel, I find that the Motion should be denied.

Plaintiffs filed their original Complaint on August 15, 2007. Defendants' Answers were filed on September 24, 2007. The court entered a Scheduling Order on October 16, 2007. On February 29, 2008, the court entered a Stipulated Order permitting Plaintiffs to amend their Complaint, and extending the time limits in the Scheduling Order, including the deadlines for discovery and for amendment of the pleadings.

On June 5, 2008, the parties stipulated to the adjournment of 13 depositions noticed by Plaintiffs. The court accepted the Stipulation and approved the parties request for a 60 day extension of scheduling dates. The district judge entered an Order establishing October 13, 2008 as the discovery cut-off and the deadline for amendments to the

pleadings. The instant Motion was filed on October 14, 2008. Because the court was closed on October 13, 2008, in observance of a federal holiday, the Motion is timely filed.

Fed.R.Civ.P. 15(a)(2) provides that a court should freely grant leave to amend when justice so requires. A court should deny leave only upon a showing of undue delay, bad faith by the moving party, repeated failure to cure defects by previously allowed amendments, futility of the proposed new claim, or undue prejudice to the opposite party. Forman v. Davis, 371 U.S. 178 (1962); Duggins v. Stake and Shake, Inc,, 195 F.3d 828, 834 (6th Cir. 1999). Defendants oppose the instant motion on grounds of undue delay, bad faith, prejudice and futility.

**Delay**

The amendment sought by Plaintiffs is the addition of claims that selection of members for the Flint Citizens Service Bureau ("CSB") from a list of police officers who actually held the rank of patrol officer when the selection was made had a disparate impact on Caucasians and males. Plaintiffs argue that their decision to amend required the acquisition of facts establishing that actually holding the rank of patrol officer, as opposed to having recent experience in that capacity, was the criterion employed. They further maintain that their decision required demographic information regarding those eligible for, and those excluded from, selection. They posit that any delay in their acquisition of the required information is attributable to the Defendants, and not to themselves.

Despite the fact that their Motion was not filed until the expiration of the twice extended discovery time limit, Plaintiffs argue that there has been no undue delay. They assert that they first received the information necessary to their decision to amend from documents obtained, from a third party, on October 1, 2008, and from the deposition of

Defendant Donald Williamson, on October 2, 2008. Plaintiffs note that the deposition of Williamson had been first noticed by them in June 2008, and that they had sought the production of pertinent documents from the Flint Defendants in January 2008. Plaintiffs acknowledge, however, their access to a February 12, 2008 Affidavit by Williamson in April 2008, approximately six months prior to the discovery cut-off.

Paragraph 10 of the Williamson Affidavit states the following:

> 10. I determined that a key qualification to be effective in this new position would be only currently-serving Police Patrol Officers with 10 to 20 years of service on the streets. I believed this to be vital because these officers would have the current sense of our citizenry and their concerns, a real feel for the streets and the "pulse" of the City, together with an intimate knowledge of the criminal element on the streets. I believe that Patrol Officers are better able to fill these positions - as opposed to those in the Police Department command levels who have not recently spent, shift-after-shift, current time on the streets of Flint.

(Williamson Brief in Opposition, Exhibit A). Plaintiffs maintain that the Affidavit is unclear, and that they were unable to determine from it whether an applicant for appointment to the CSB was required to <u>currently hold</u> the position of patrol officer, or merely have <u>recent experience</u> in that position. They assert that this mystery was only solved by the deposition testimony of Williamson, on October 2, 2008, and that the disparate impact on them of his policy could only have been confirmed by documents equivalent to those received by them from third party sources on October 1, 2008. They note that they served requests for the production of such documents upon the Flint Defendants in January 2008, but that no production was made. On those bases, they contend that any delay in the filing of their Motion to File a Second Amended Complaint must be attributed to the Defendants. I disagree.

As an initial matter, I find no ambiguity in Williamson's Affidavit. His description of the selection criteria employed by him is clearly stated. ("I determined that a key qualification to be effective in this new position would be only currently - serving Police Patrol Officers with 10 to 20 years of service on the streets.") The balance of his paragraph 10 is merely an explanation of the policy basis for his clearly stated criterion. He declared his view that incumbent patrol officers "would have the current sense of our citizenry and their concerns," and thus were better able to fill CSB positions - "as opposed to those in the police department command levels who have not recently spent, shift-after-shift, current time on the streets of Flint." The Affidavit is clear with respect to the selection criterion in question. If that criterion is a proper basis for a disparate treatment claim, Plaintiffs have known of it since at least April 2008.

Even if it could be rationally concluded that these Plaintiffs and their counsel were confused by Williamson's Affidavit to the point of believing that recent experience as a patrol officer might qualify them for appointment to the CSB, there is no evidence to suggest that they could have met even that more generous criterion. Defendants assert that "both Plaintiffs had held the rank of Sergeant for more than 12 years at the time the CBS selections were made." (Williamson/Hagler Response Brief, Page 6). Plaintiffs have not contested that assertion. Notwithstanding Plaintiffs' reliance on Webster's definition of "recent," I conclude that no reasonable application of the term in this instance could have rendered them qualified for appointment to the CSB. Thus, I remain persuaded that, if these Plaintiffs ever had a basis for a disparate impact claim, they knew of it in April 2008. They did not seek to file a Second Amended Complaint until October 2008. A six

4

month delay, which exhausts the period established by the court for completion of all discovery is, in my view, undue delay.

Plaintiffs charge that responsibility for any delay in the filing of their Motion rests with the Defendants. They note that Williamson's deposition was noticed in June 2008, and claimed that "Defendants postponed the deposition." (Plaintiffs' Brief, Page 7). The record reflects, however, that the parties stipulated to the adjournment on June 5, 2008 "to facilitate the rescheduling [of depositions] with two other attorneys representing forty-two other Plaintiffs" in two other cases pending in this court. Thus, not only did Plaintiffs agree to the delay, the ultimate timing of the depositions was not a matter solely within the control of these Defendants. Plaintiffs were not forced to postpone the Williamson deposition. Nor were they precluded from employing other discovery devices to clarify and confirm the criteria applied in his CSB appointments.

Plaintiffs attempt to hold Defendants solely responsible for delay in producing documents lends itself to a similar analysis. The Flint Defendants did not simply disregard Plaintiffs' document requests. Rather, they served objections to the requested production. The Federal Rules of Civil Procedure provide for such objections (Fed.R.Civ.P. 34(b)(2)) and afford a mechanism for the enforcement of discovery rights (Fed.R.Civ.P. 37). There is no evidence that these Plaintiffs made any effort to overcome Defendants' objections and compel the production of any document. In the absence of such an effort, this court is not at liberty to merely assume that Defendants' objections were improper. Having neglected to pursue their discovery rights, Plaintiffs may not escape responsibility for the delay in obtaining information.

**Prejudice**

Delay alone does not justify denial of a motion brought pursuant to Rule 15(a). Insurance Co. of Hartford v. Kevin Tucker and Associates, Inc., 64 F.3d 1001, 1009 (6th Cir. 1995).  However, the party seeking to amend should "act with due diligence if it wants to take advantage of the rule's liberality." Parry v. Mohawk Motors of Michigan, Inc., 236 F.3d 299, 306 (6th Cir. 2000).  Thus, where "amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." Wade v. Knoxville Util. Bd., 259 F.3d 452, 459 (6th Cir. 2001).  Failure to plead an available claim in a timely manner deprives an opposing party of "notice that it would have to defend" against the new claim.  Id.  Courts are especially inclined to deny a motion brought under Rule 15 "if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for failure to plead them."  6 Charles Alan Wright et al., Federal Practice and Procedure Section 1487 (2nd Edition 1990); see Wade, 259 F.3d at 459.

An amendment to a complaint prejudices a party where the amendment will require the party to prepare an additional defense strategy and expend additional resources to defend against new claims.  See Troxel Mfg. Co. v. Schwinn Bicycle Co., 489 F.2d 968, 971 (6th Cir. 1973).  Our circuit has held that allowing amendment after the close of discovery prejudices a defendant:

> Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court. See Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999) ("at least one Sixth Circuit decision has held that allowing amendment after the close of discovery creates

> significant prejudice, and other circuits agree.") (citations omitted).

Miller v. Admin. Office of Courts, 448 F.3d 887, 898 (6th Cir. 2006). The Sixth Circuit has even found that "amendment on the eve of the close of discovery would be prejudicial to defendants and unduly delay trial." Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792, 806 (6th Cir. 2005) (emphasis added).

Defendants argue that the timing of the instant Motion is significantly prejudicial to them. They observe, correctly, that the deadline for discovery has now passed, and that Plaintiffs are attempting to assert an entirely new legal theory. They claim that allowance of an amendment at this juncture would require a new period of discovery, and would necessarily increase the effort and expense required to mount an appropriate defense.

Plaintiffs are guilty of delay in amending their Complaint. The facts upon which the proposed amendments are based were available to them well in advance of the instant motion, but they waited until the end of discovery to seek the enlargement of their Complaint. I am satisfied, as well, that the amendment sought would require significant additional discovery, and thus would delay the ultimate disposition of the case.

### **Futility**

Defendants argue that, aside from Plaintiffs unwarranted delay in raising them, their disparate impact claims are futile. The argument is based, in part, on the ground that Plaintiffs failed to exhaust their administrative remedies. The scope of a discrimination complaint in federal court is limited to the scope of the investigation reasonably expected to grow out of an administrative charge of discrimination. N A & G v. Proctor and Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991). The rule serves an important public policy.

7

> The requirement that the plaintiff exhausted administrative remedies prior to instituting suit is intended to ensure that the [administrative agency] will have been afforded an opportunity to attempt conciliation and voluntary settlement, the preferred means for resolving employment discrimination disputes.

Parsons v. Yellow Freight Sys., Inc., 741 F.2d 871, 873 (6th Cir. 1984) (citations and internal quotation marks omitted). Defendants argue that these Plaintiffs failed to present claims of disparate impact in their complaints to the Michigan Department of Civil Rights ("MDCR"). I agree.

"[T]he necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 987 (1988). Neither of these Plaintiffs asserted in his administrative complaint that an employment practice or procedure employed by the City of Flint resulted in a disparate impact upon a protected group of which he is a member. On the contrary, each Plaintiff alleged that the city "did not follow its policy and procedures" when it denied him promotion. The clear implication is that the "policy and procedures" in question would have yielded a non-discriminatory result.

Plaintiffs respond that "[w]hile the EEOC charge must give enough detail to describe the basis of the discrimination charge, a plaintiff may allege claims in a complaint not specifically set forth in the EEOC charge if facts related to the charged claim would prompt the EEOC to investigate a different claim not specifically alleged." (Plaintiffs' Reply Brief, Page 3). They rely upon Love v. TVA Board of Directors, 2008 WL 906115 (M.D. Tenn. 2008). Plaintiffs cite the case for the proposition that "where a complaint to the EEOC is specifically references the fact that promotion policies gave individuals with less experience

positions over better qualified candidates, it is reasonable to conclude that the complaint potentially encompassed a disparate impact claim as well as a claim of intentional discrimination. " (Plaintiffs' Reply Brief [D.E. #30] p. 3). Plaintiffs own analysis distinguishes Love from the case at bar, as there is nothing in Hamilton's or Sparks' administrative complaints to suggest that "promotion policies" employed by these Defendants resulted in disparate impact.  The essential allegation of both Plaintiffs' complaints is that the Defendants failed to follow policies and procedures which would not have excluded them.

Finally, Plaintiffs argue that the MDCR investigation of Defendants' employment criteria "makes it clear that not only was intentional discrimination at issue but that disparate impact was also being investigated and a disparate impact claim was included in scope (sic) of Plaintiffs' initial complaints of discrimination."  But Plaintiffs have offered no evidence that the MDCR recognized their complaints as disparate impact claims. Acceptance of their argument would seriously undermine the important policy underlying the exhaustion of administrative remedies requirement.  The likelihood of conciliation and voluntary settlement is enhanced by a clear statement of complaint.  In the absence of recognition, conciliation is virtually impossible.  For this court to hold that these Plaintiffs adequately raised disparate impact claims at the administrative stage is simply to eliminate the need for exhaustion. I conclude that Plaintiffs have failed to exhaust their administrative remedies with respect to their proposed disparate impact claims under Title VII.[1]

---

[1] In any event, as Plaintiffs concede, that claims against Defendants Williamson and Hagler cannot be brought under Title VII. Wathen v. General Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997).  Further, neither Williamson nor Hagler was named as a respondent in the Plaintiffs' MDCR actions.

9

To the extent that Plaintiffs' Motion seeks to assert disparate impact claims of discrimination under 42 U.S.C. §§1981 and 1983, the Motion must be denied. Those statutes concern themselves with claims of intentional discrimination. As stated by the Supreme Court in <u>Watson</u>, "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination. 487 U.S. at 987. Mere disparate impact is not sufficient to state an equal protection claim under Section 1983. <u>Weberg v. Franks</u>, 229 F.3d 514 (6th Cir. 2000); <u>Copeland v. Machulis</u>, 57 F.3d 476, 481 (6th Cir. 1995). Nor are disparate impact claims cognizable under Section 1981. <u>Gen. Building Contractors Assoc. v. Penn</u>, 458 U.S. 375, 388-91 (1982).

As observed by Defendants Williamson and Hagler, a generally applicable law with disparate impact is not unconstitutional in the absence of proof of discriminatory intent. <u>Village of Arlington Heights v. Metropolitan Housing Dev. Corp.</u>, 429 U.S. 252 (1977); <u>Washington v. Davis</u>, 426 U.S. 229 (1976). The Fourteenth Amendment does not regard neutral laws as invidious, even when their burdens purportedly fall disproportionately on a protected class. <u>Crawford v. Marion County Election Bd.</u>, 128 S.Ct. 1610 (2008).

In response, Plaintiffs cite <u>Village of Arlington Heights</u> for the proposition that a disparate impact claim is cognizable under 42 U.S.C. §§1981 and/or 1983. They simply misread the case. The decision confirms the correctness of the Defendants' position.

> Our decision last term in <u>Washington v. Davis</u> made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. 'Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' Proof of

10

>racially discriminatory intent or purpose is required to show a violation of the Equal Protection clause.

Village of Arlington Heights, 429 U.S. at 264-65 (internal citations omitted).

Plaintiffs do correctly rely on Village of Arlington Heights for the view that "facts demonstrating that a Defendant's actions have a disparate impact are properly considered evidence of intentional discrimination and that determining whether invidious discriminatory purpose was a motivating factor demands inquiry into such evidence of intent as may be available." (Plaintiffs' Reply Brief, Page 4) (emphasis added). The Court did recognize that the impact of official action, and whether it "bears more heavily on one race than another" may provide an important evidentiary starting point. Plaintiffs simply confuse the concepts of "evidence" and "cause of action." It is clear that no "cause of action" for disparate impact discrimination will lie under 42 U.S.C. §§1981 and 1983. The fact that evidence of disparate impact may be admissible in support of a "cause of action" for invidious, intentional discrimination filed under those statutes is not an appropriate basis for amending a complaint which already charges intentional discrimination. Plaintiffs need only offer their evidence at the appropriate point in the case.

## Bad Faith

The individual Defendants assert that Plaintiffs' claim of ambiguity in the Williamson Affidavit, and their attempts to evade any responsibility whatever for delays associated with discovery demonstrate bad faith. I am not prepared to make that finding. I do find, however, that the Plaintiffs are guilty of undue delay in the filing of their Motion to Amend; that they failed to avail themselves of mechanisms provided in the Federal Rules of Civil Procedure for obtaining timely and complete discovery; that they failed to exhaust their

administrative remedies with respect to the proposed disparate impact discrimination claims; that Title VII will not support such claims against the individual Defendants; and that 42 U.S.C. §§1981 and 1983 will not support substantive claims of disparate impact discrimination.

For all of the above reasons, Plaintiffs' Motion for Leave to File Second Amended Complaint is DENIED.

                                  s/Donald A. Scheer
                                  DONALD A. SCHEER
                                  UNITED STATES MAGISTRATE JUDGE

DATED: April 6, 2009

_____

### CERTIFICATE OF SERVICE

I hereby certify on April 6, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on April 6, 2009: **None.**

                                  s/Michael E. Lang
                                  Deputy Clerk to
                                  Magistrate Judge Donald A. Scheer
                                  (313) 234-5217